IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RELENTLESS, INC., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. DEPARTMENT OF COMMERCE, et al., | : | Civil Action No. 1:20-cv-00108-WES-PAS |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF COLUMBIA**

**INTRODUCTION**

Defendants are currently defending two separate, but nearly identical lawsuits, which are pending in two different courts. Both this suit and one in the U.S. District Court for the District of Columbia challenge the National Marine Fisheries Service's ("NMFS") implementation of the New England Fishery Management Council's Industry-Funded Monitoring Omnibus Amendment ("Omnibus Amendment"). The Omnibus Amendment and the final rulemaking that implements the Omnibus Amendment (which was finalized and published in the Federal Register on February 7, 2020) provide standards for at-sea monitoring service providers, standard government and industry cost responsibilities, and priorities for implementing future at-sea monitoring programs in New England fishery management plans. The Omnibus Amendment and final rule also establish industry-funded monitoring in the Atlantic herring fishery to help provide increased accuracy in catch estimates. The issues related to the Omnibus Amendment and final rulemaking could have been raised in a number of locations. But this lawsuit should be transferred to and consolidated with the lawsuit in the District of Columbia, which was filed first.

The interests of justice dictate that the appropriate venue for these two cases is Washington, D.C., because both suits stem from the same complex set of facts, with the same administrative record and substantially the same legal issues. Indeed, judicial efficiency and economy would benefit dramatically by transferring this case to Washington, D.C., where litigation is already proceeding. Furthermore, the decisionmaking process that led to the Omnibus Amendment and final rulemaking was formulated in Massachusetts and in the Washington, D.C. metropolitan area – not in the District of Rhode Island. Nor are the issues presented in this case unique to Rhode Island: they affect all participants in the Atlantic herring fishery, which includes communities in Maine, New Hampshire, Massachusetts, Rhode Island, and New Jersey.

The interests of the parties do not dictate against transfer. Although Plaintiffs chose the District of Rhode Island as their venue, one of the three Plaintiffs resides in Massachusetts. Thus, the Court need not defer to Plaintiffs' choice of forum, where one of them is a non-resident. Transfer also avoids prejudice to Defendants, who must otherwise defend substantially similar lawsuits in two locations, thus posing a risk of conflicting decisions on the same regulation.

For all these reasons, as explained in more detail below, Defendants request that the Court transfer the case to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404(a). This case could have been brought in the District of Columbia and a weighing of the public and private factors demonstrates that the interests of justice and convenience favor transfer.

## ARGUMENT

## THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF COLUMBIA.

The Court has authority to transfer this case pursuant to 28 U.S.C. § 1404(a), which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[T]he statute's purpose is 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *World Energy Alts., LLC v. Settlemyre Indus.*, 671 F. Supp. 2d 215, 217 (D. Mass. 2009) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). The statute is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted); *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009). To make that determination, the Court must look to both private and public interest factors to determine if transfer is appropriate. *Boothroyd Dewhurst, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, Civ. A. No. 92-0075-P, 1993 WL 385713, at *7 (D.R.I. July 8, 1993). Such factors include: (1) ease of access to sources of proof; (2) availability of compulsory process to compel attendance of witnesses; (3) cost of attendance of willing witnesses; (4) ease of a view of premises, if necessary; (5) enforceability of the judgment, if obtained; (6) advantages and obstacles to a fair trial; (7) status of the court's trial calendar; and (8) familiarity of forum with applicable state law. *Id.* (citation omitted); *see also Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). In addition to convenience of parties and witnesses, courts also consider the possibility of consolidation. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *Cianbro*, 814 F.2d at 11.

As set forth below, transfer of this case to the District Court for the District of Columbia complies with the statutory requirements and is supported by all relevant considerations.

### A. It Is Proper To Transfer This Case Because Plaintiffs Could Have Brought This Action In The District Of Columbia.

This case could have been brought in the District of Columbia. The primary mandate in 28 U.S.C. § 1404(a) is that the new forum be a "district or division where [the case] might have been brought." Where the case "might have been brought" is determined by 28 U.S.C. § 1391(e)(1), which provides that, in suits against the agencies of the United States, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides." *Id*. Based on these factors, venue in the District of Columbia would be appropriate.

First, the claims in the Complaint rely on federal question jurisdiction and the grant of jurisdiction under the Administrative Procedure Act ("APA"). ECF 1 (Complaint ¶ 4). To the extent that this Court has jurisdiction over those claims, the District of Columbia also has subject matter jurisdiction. Second, venue in the District of Columbia is proper because it is a "judicial district in which . . . a defendant in the action resides." 28 U.S.C. § 1391(e)(1). The first-listed defendant is the United States Department of Commerce, which is located in the District of Columbia, thereby making venue proper in that district.

### B. The Interests Of Justice And Convenience Favor Transfer.

Under 28 U.S.C. § 1404(a), the Court also must consider the interests of justice and convenience. "Courts frequently divide factors they consider into private and public categories. . . . Private factors include the statutory considerations of convenience of the parties and witnesses, but also include the plaintiff's forum preference, where the claim arose, and the relative ease of access to sources of proof. Public factors, which encompass the statutory

4

consideration of the interest of justice, focus on judicial economy and often include the district court's familiarity with governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts." *Amary v. JP Morgan Chase & Co.*, Civ. Action No. 12–10777–NMG, 2012 WL 6045980, at *2 (D. Mass. Oct. 18, 2012) (quoting 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 3d* § 3847 (4th ed. 2007)); *see also Cianbro*, 814 F.2d at 11. The First Circuit also considers "the possibility of consolidation; and the order in which the district court obtained jurisdiction." *Coady*, 223 F.3d at 11. As shown below, transferring this case to the District of Columbia would advance the interests of justice and convenience.

### 1. The public factors, especially the interests of justice and promotion of judicial efficiency, weigh heavily in favor of transfer.

The public factors collectively weigh heavily in favor of transfer because "the interests of justice" and judicial economy favor transfer where, as here, there are two cases challenging the same decision in different jurisdictions. 28 U.S.C. § 1404(a). In fact, "[m]any federal courts consider the interest of justice to be 'decisive—outweighing the other statutory factors—in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction.'" *Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods*, Civ. Action No. 12-10551-NMG, 2012 WL 12941889, at *13 (D. Mass. Sept. 28, 2012) (quoting 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 3d* § 3854 (4th ed. 2007)).

The District of Columbia is highly familiar with the governing law under the Magnuson-Stevens Fisheries Conservation and Management Act ("Magnuson-Stevens Act"), including lawsuits concerning amendments to fishery management plans. *E.g.*, *Flaherty v. Ross*, 373 F. Supp. 3d 97 (D.D.C. 2019); *Oceana, Inc. v. Ross*, 275 F. Supp. 3d 270 (D.D.C. 2017). Indeed,

other plaintiffs representing participants in the Atlantic herring fishery filed a substantially similar lawsuit challenging the Omnibus Amendment in the District of Columbia on February 19, 2020. *Loper Bright Enters. v. Ross*, Case No. 20-cv-00466 (D.D.C.) (complaint attached as Exhibit A). The plaintiffs in the *Loper Bright Enterprises* case assert causes of action that involve the same issues as in this case, including claims that the final rule exceeds Defendants' statutory authority, and improperly infringes on Congress's exclusive taxation authority and power to direct the use of public funds under the Tax and Spending and Appropriation Clauses of the U.S. Constitution, and that the Omnibus Amendment and final rule both violate the National Environmental Policy Act and the Regulatory Flexibility Act.[1] *Compare id. with* ECF 1. Defendants intend to respond to that lawsuit and lodge their administrative record by April 9, 2020, within the 45-day time period required by the Magnuson-Stevens Act. 16 U.S.C. § 1855(f)(3)(A). Should the Court grant this motion to transfer, Defendants likely would seek to consolidate this action with the *Loper Bright Enterprises* case, a pertinent fact in evaluating this motion. *See Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009) (the court "can and should consider consolidation in its decision to transfer"). The Supreme Court has observed that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960). This principle is particularly true in this case, where there is risk of conflicting opinions if these two highly similar cases are allowed to proceed in different jurisdictions. *Midwest Television v. FCC*, 364 F.2d 674, 675-76 (D.C. Cir. 1966) (*per curiam*)

---

[1] The *Loper Bright Enterprises* plaintiffs additionally allege that Defendants have violated the Anti-Deficiency Act and Miscellaneous Receipts Act, and charged improper fees in violation of the Independent Offices Appropriations Act. *See* Exhibit A.

6

(transferring case to Eighth Circuit to avoid the "anomalous results inherent in the possibility of conflicting decisions").

Transferring this case will clearly serve the interests of judicial economy for several additional reasons. First, only one court will have to familiarize itself with the administrative record and develop an understanding of the lengthy administrative process and the various statutory mandates at issue. Second, as outlined above, coordinated proceedings will avoid the possibility of conflicting orders and will ensure that all parties' claims are heard in an orderly fashion so that each party is assured that its claims will receive due consideration. Third, transferring this action will also serve the public interest by avoiding costs associated with unnecessary duplication of effort. Thus, the existence of another case challenging the Omnibus Amendment and the efficiencies that can be achieved through transferring this case weigh in favor of such a result.

The other public factors also favor transfer. Generally, there "is a local interest in having localized controversies decided at home," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), "especially in environmental cases or other matters involving land or matters of local policy." 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 3d* § 3854 (4th ed. 2019). Yet, the issues presented in this case have a broad scope and a regional impact that extend beyond Rhode Island. The *Loper Bright Enterprises* case is itself evidence of that regional impact: the plaintiffs in that lawsuit are comprised of a collection of vessels and operators located in New Jersey. *See* Exhibit A ¶¶ 11-18. These various interests reflect the regional scope of the participants in the Atlantic herring fishery, which operates from New England to New Jersey. ECF 1 (Complaint ¶ 33 ("In federally managed waters, the Atlantic herring

population is concentrated from New England to New Jersey.")).  In short, this is not a local controversy, thus this factor should be resolved in favor of transfer.

Finally, relative court congestion weighs slightly in favor of transfer.  In the year ending September 30, 2019, the pending number of cases per judge was only slightly lower in the District of Rhode Island (223) than in the District of Columbia (259).  *See* Exhibit B (Administrative Office of the Courts, U.S. District Court – Judicial Caseload Profiles for Rhode Island and the District of Columbia).  However, in the twelve-month period ending September 30, 2019, the median amount of time for cases to be resolved in the District of Rhode Island from filing to disposition was 9.2 months.  *See id*.  By comparison, in the District of Columbia, the median amount of time for cases to be resolved from filing to disposition was 5.1 months.  *See id*.  The different time frames for resolution weigh in favor of transfer, particularly in this case, which asserts claims under the Magnuson-Stevens Act.  That is, Congress has provided that claims arising under the Magnuson-Stevens Act should be heard promptly.  16 U.S.C. § 1855(f)(3)(A)-(B).  Transferring this case to the District of Columbia has the potential to further that statutory directive.

The public factors, particularly the interests of justice, favor transfer.

> **2.     The private factors, including inconvenience to the parties and access to sources of proof, favor transfer to the District of Columbia.**

An assessment of the private factors demonstrates that transfer to the District of Columbia is appropriate.  The District of Columbia will not present any inconvenience to Plaintiffs in light of the nature of this case, nor is Plaintiffs' choice of forum entitled to any weight.

This case likely will be decided on the basis of the administrative record without trial. *Ore v. Clinton*, 675 F. Supp. 2d 217, 224 (D. Mass. 2009) (review of agency action is governed

8

by the APA and based on the administrative record before the agency at the time of its decision). In a record review case, there is no need for witnesses or other sources of proof, as the "focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court." *Id.* (citation omitted). Accordingly, the convenience and location of witnesses is less critical when assessing venue. *Narragansett Indian Tribe v. Hendrickson*, C.A. No. 1:19-cv-00158-MSM-PAS, 2020 WL 65087, at *1 (D.R.I. Jan. 7, 2020) ("As [this] is a case brought under the [APA], 'neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the [venue] analysis.'") (quoting *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C. 2010)); *see also Cole v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 227 F. Supp. 2d 190, 199 (D. Mass 2002) (in a record review case, "convenience of witnesses is not a consideration since there will be no witnesses called"); *Little Bay Lobster Co. v. Daley*, No. CIV. 00–007–M, 2001 WL 274797, at *3 (D.N.H. Jan. 12, 2001) (recognizing that, in a record review case "the convenience of witnesses, the availability of process, and the cost of obtaining witnesses are not serious factors").

For this same reason, the availability of documents is not a critical factor: the case likely will be decided on an administrative record that will be compiled and provided to the Court and the parties. *See generally id.* Additionally, significant travel will not be required because this case is likely to be resolved on motions to dismiss or for summary judgment. Therefore, Plaintiffs would not be inconvenienced by litigating this case in the District of Columbia, nor would the cost of making the necessary proof be increased. In short, this is not a case in which the result of transfer would be to shift inconvenience from one party to the other. *Cf. Brian Jackson & Co. v. Eximias Pharm. Corp.*, 248 F. Supp. 2d 31, 38 (D.R.I. 2003) (transfer is

9

inappropriate where it would "merely shift the inconvenience to the other party") (citations omitted).

Nor should Plaintiffs' choice of forum be afforded any weight. While two of the Plaintiffs in this case are Rhode Island corporations that own vessels headquartered in Rhode Island, the Complaint alleges that the third Plaintiff, Seafreeze Fleet LLC, owns the other Plaintiffs. ECF 1 (Complaint ¶¶ 9-11). The Complaint also alleges that Seafreeze Fleet LLC is organized and operating under the laws of the Commonwealth of Massachusetts, and is headquartered in Massachusetts. *Id.* ¶ 11.[2] While "[i]t is true that ordinarily a 'strong presumption favors [the] Plaintiff's choice of forum[,] the strong presumption is greatly weakened where [the] plaintiff's chosen forum is not also his home.'" *See Nash v. CVS Caremark Corp.*, C.A. No. 09-079S, 2009 WL 2393937, at *2 (D.R.I. July, 1, 2009) (citations omitted). Here, the Complaint alleges that a Massachusetts entity owns the two Rhode Island Plaintiffs. In light of this, there should be no presumption in favor of this non-resident's choice of forum.[3] *See also Fifty-Six Hope Rd. Music, Ltd. v. Raising Cane's USA, LLC*, Civ. Action No. 13–13110–RGS, 2014 WL 496890, at *3 (D. Mass. Feb. 7, 2014) (the presumption in favor of plaintiff's choice of forum "applies with less force than usual because the Commonwealth is not its home state"). There is only a tenuous connection between this District and all of the Plaintiffs, thus the Court should not afford any weight to Plaintiffs' choice of forum.

---

[2] The attachments to the Complaint indicate that another entity, Seafreeze Ltd., has submitted multiple letters and comments to NMFS. *See* ECF 1 (Exhibits 4, 5, 6, 9). The listed address for Seafreeze Ltd. is in Rhode Island. *Id.*

[3] Furthermore, the interests of justice and maintaining the integrity and efficiency of the judicial system override a plaintiff's choice of forum. *See*, *e.g.*, *Johnson v. N.Y. Life Ins. Co.*, C.A. No. 12-11026-MLW, 2013 WL 1003432 (D. Mass. Mar. 14, 2013) (plaintiff's choice of forum did not control where other litigation was pending and there was a risk of inconsistent judgments). As outlined in Section B.1, *supra*, those factors weigh definitively in favor of transfer.

Thus, the private factors concerning inconvenience to parties and witnesses and access to sources of proof should be resolved in favor of transfer.

### 3. The remaining factor considered by the First Circuit is neutral.

As discussed above, the First Circuit also considers the order in which the district court obtained jurisdiction. *Coady*, 223 F.3d at 11. But, this factor is considered only when "identical actions are proceeding concurrently in two federal courts." *Cianbro*, 814 F.2d at 11. While the issues before the Court in this case and the *Loper Bright Enterprises* case significantly overlap, the plaintiffs are different, thus the cases cannot be characterized as "identical actions." *Id*. As a result, on balance, this factor is neutral.

## CONCLUSION

All of the factors relevant to the consideration of transfer under 28 U.S.C. § 1404(a) support the transfer of this action to the District of Columbia. This action could have been brought in the District of Columbia. The interests of justice strongly favor transfer. Moreover, transfer of this case to the District of Columbia, for consolidation with a case that asserts substantially similar claims, is appropriate, because:

- The cases stem from an identical set of facts related to the Omnibus Amendment and involve identical administrative records;

- The cases present substantially similar legal issues;

- Judicial economy supports transfer and consolidation of the cases, to avoid two courts considering highly similar issues and potentially issuing conflicting decisions;

- The dispute does not involve issues that are purely local or even unique to Rhode Island;

11

- The District of Rhode Island lacks meaningful ties to the agency action because the decisionmaking process that led to the Omnibus Amendment and final rulemaking was formulated in Massachusetts and in the Washington, D.C. metropolitan area; and

- Transfer to Washington, D.C., will pose no inconvenience to Plaintiffs in light of the nature of this case.

Clearly, the issues in this case and the *Loper Bright Enterprises* case are related to such an extent that the interests of justice require transfer and consolidation in the same court. The interests of the parties do not compel a different conclusion. For the foregoing reasons, Defendants respectfully request that the Court promptly transfer this matter to the United States District Court for the District of Columbia to enable Plaintiffs to meaningfully participate in the ongoing litigation there.

Dated: April 2, 2020                    Respectfully submitted,

JEAN E. WILLIAMS,
Deputy Assistant Attorney General
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief

/s/ Alison C. Finnegan
Alison C. Finnegan, Senior Trial Attorney
(Pennsylvania Bar No. 88519)
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0500; Fax: (202) 305-0275
alison.c.finnegan@usdoj.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2020, I electronically filed the foregoing Motion to Transfer Venue to the District of Columbia and Memorandum of Law in Support thereof with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

    /s/ Alison C. Finnegan