IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **RELENTLESS INC., et al.** | : | |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | Case No. 1: 20-cv-00108-WES-PAS |
| | : | |
| | : | **PLAINTIFFS' RESPONSE IN** |
| **U.S. DEPARTMENT OF COMMERCE,** | : | **OPPOSITION TO DEFENDANTS'** |
| **et al.** | : | **MOTION TO TRANSFER VENUE** |
| *Defendants*. | : | **TO THE DISTRICT OF COLUMBIA** |

The Defendants, all agencies or employees of the Federal Government, have made a motion to transfer venue to Washington, D.C. despite the fact that the case is about the regulation of fishing by Rhode Island boats owned by Rhode Island companies that operate out of Rhode Island ports, which have been injured in Rhode Island by the actions of the Defendants. The most important factor in any motion to transfer is the Plaintiffs' choice of forum and, wholly ignoring this, the Defendants' tempt the court into error by misstating the test in cases of this kind and the true location of the Plaintiffs. Neither the facts nor the law support Defendants' position, and the motion should be denied.

**I.   FACTS**

**A. The Plaintiffs Are Located in Either Rhode Island or Massachusetts**

The Plaintiffs are: (1) Relentless Inc. ("Relentless"), a Rhode Island corporation that owns and operates F/V *Relentless* out of North Kingstown, Rhode Island; (2) Huntress Inc. ("Huntress"), a Rhode Island Corporation that owns and operates F/V *Persistence* out of North Kingstown, Rhode Island; and, (3) Seafreeze Fleet LLC ("Seafreeze"), a Massachusetts limited liability company, headquartered in Ipswich, Massachusetts. Compl. ¶¶ 9-11. Ipswich is about 100 miles from North Kingstown. All the commercial activities involved in this case and regulated by the New England

Fishery Management Council's Industry-Funded Monitoring Omnibus Amendment ("IFM Amendment"), and the February 7, 2020 Final Rule ("Final Rule"), are perforce out of North Kingstown.

### B. The Defendants Are Located in Either the District of Columbia or Silver Spring, Maryland, and Decisions Related to the Adoption of the Challenged Regulation Occurred There or in Massachusetts

The Defendants are either Federal agencies or their heads or employees, involved in the injuries alleged in the Complaint. The natural persons named as Defendants are all sued in their official capacities. Compl. ¶¶ 12-17, ECF No. 1. The Federal Government is present and exerts its influence throughout the United States, including, as in this case, Rhode Island. All Defendants are represented by the same attorneys for the U.S. Department of Justice. But not all Defendants are located in the District of Columbia. The National Marine Fisheries Service ("NMFS") and Chris Oliver, its Assistant Administrator, are located in Silver Spring, Maryland. *See* Aff. of Service, ECF No. 8 (NMFS and Chris Oliver served in Silver Spring, Maryland); *see also* Mem. of Law in Supp. of Defs.' Mot. to Transfer Venue to the Dist. of Columbia 2, ECF No.10-1 ("the decisionmaking process that led to the Omnibus Amendment and final rulemaking was formulated in Massachusetts and in the *Washington, D.C. metropolitan area*" (emphasis added)). As the Agencies implicitly admit, many of the decisions leading the IFM Amendment and Final Rule were determined by the New England Fishery Management Council ("NEFMC"), which is based out of Newburyport, Massachusetts. Its voting members are spread across New England. *See* NEFMC, *Council Members* (last visited Apr. 14, 2020) *available at* https://www.nefmc.org/about/council-members.

### C. The Allegations in the Complaint Support a Finding That Venue Lies in the District of Rhode Island

The key allegations of the Complaint establish that F/Vs *Relentless* and *Persistence* are unique among the Atlantic herring fishery. *See, e.g.,* Compl. ¶ 9, ECF No. 1 ("F/V *Relentless* uses a unique at-sea freezing technique that allows the vessel to stay at sea longer than other vessels in the Atlantic herring fishery and provides the vessel flexibility in what catch it harvests during fishing trips. For Atlantic herring, F/V *Relentless* uses small-mesh bottom trawl gear and holds a Category A permit…. Due to F/V *Relentless'* unique at-sea freezing technique, Relentless will also be subject to disparate treatment relative to the rest of the Atlantic herring fleet under the IFM Amendment and the Final Rules."); *accord id.* ¶ 10 (same regarding the F/V *Persistence*).

The way Plaintiffs' business and fishing differs from other parts of the fleet are also detailed in Complaint paragraphs 47-59. For example, Plaintiffs "alternatively and sometimes simultaneously harvest Atlantic herring, as well as other managed species" and under their style of fishing they "typically declare into herring, squid, and mackerel fisheries on the trips they take from late November through April" because "this flexible style of fishing allows Plaintiffs to cover operating costs by switching over to a different species based on what they can catch." *Id.* ¶¶ 48, 50.

Due to costs associated with the IFM Amendment and Final Rule, Plaintiffs will likely be unable to use this unique flexible style of fishing they have developed, as it could result in fishing trips losing money. *Id.* ¶ 59. For example, "[u]nder Plaintiffs' style of fishing it is possible to have a declared herring/mackerel trip, that is selected for observer coverage, that only harvests squid and butterfish." *Id.* ¶ 54. As such, "Plaintiffs may be forced to carry a herring at-sea monitor on a declared herring trip, that does not end up harvesting herring." *Id.* ¶ 55. As the Complaint notes, F/Vs *Relentless* and *Persistence* are, Plaintiffs believe, "the only vessels in the Atlantic herring fleet who declare into and /or harvest squid and butterfish on the same trip as declared Atlantic herring trips." *Id.* ¶ 56. The Complaint further notes that "in comparison to other vessels in the Atlantic herring fishery, F/Vs

*Relentless* and *Persistence* have more limited catching and processing capacity, longer trips, and higher overhead costs." *Id.* ¶ 58.

The Complaint also notes that, as small-mesh bottom trawls, the regulatory alternatives available to other vessels are not available to Plaintiffs', who can only comply with the IFM Amendment and Final Rule by carrying and bearing the cost of an at-sea monitor. *Id.* ¶ 75. Moreover, the way the proposed regulations raise different issues related to this kind of fishing were the subject of comments submitted by Meghan Lapp, Fisheries Liaison, Seafreeze, Ltd., (a sister company of Seafreeze) as noted in the Complaint. *Id.* ¶¶ 61-62, 68. Ms. Lapp resides in Narragansett, Rhode Island.

The impact of the regulations complained of are different from those of other vessels in the Atlantic herring fleet. Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, that difference must be addressed to ascertain whether the regulations are arbitrary and capricious. In fact, Count Four, asserting that the IFM Amendment and Final Rule violates the Regulatory Flexibility Act ("RFA"), 5 U.S.C. § 601 *et seq.*, requires a unique analysis in its entirety to the factual differences between Plaintiffs' vessels and any other vessels in the Atlantic herring fleet, and the problems from this regulation arising as a result of those differences.

Counsel for the plaintiffs in *Loper Bright Enterprises, Inc. v. Ross,* Case No. 20-cv-00466 (D.D.C.) (filed Feb. 19, 2020), which the Defendants assert they wish to consolidate this case with after transfer, have indicated that they do not view the cases as the same and intend to oppose any motion to consolidate in Washington, D.C. *See* Decl. of Ryan P. Mulvey (Apr. 7, 2020) (attached hereto as Exhibit A).

## II. ARGUMENT

### A. This Case Should Not Be Transferred

Defendants have so misstated the standard for transfers in situations such as this one *sub judice*, even from their own chosen cases, that some effort must be expended to highlight the effort to tempt this court into error.

Under, 28 U.S.C. § 1404(a), a court may transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See World Energy Alts., LLC v. Settlemyre Indus.,* 671 F. Supp. 2d 215, 217 (D. Mass. 2009) (stating standard).[1] While the trial court has discretion in deciding whether to transfer a case, there is a strong presumption in favor of the plaintiff's chosen forum and the party seeking transfer bears the burden of proof. *Id.*; *JKA, Inc. v. Anisa Intern. Inc.*, C.A. No. 07-123S, 2008 WL 4949126 *10 (D.R.I. Nov. 13, 2008) (Smith, J.) (adopting report and recommendation); *see also id.* (noting that when plaintiff is a resident of the district then the presumption in favor of plaintiff's chosen forum is provided even greater deference).

A party seeking to transfer may prevail if it can establish that the balance of case-specific factors favors transfer. *See Caguas Lumber Yard Inc. v. Ace Hardware Corp.*, 827 F. Supp. 2d 76, 80 (D.P.R. 2011), *aff'd*, No. CIV. 11-1684 GAG, 2011 WL 5837808 (D.P.R. Nov. 21, 2011). While "[s]ome courts divide the factors into private and public categories, as is done in considering a motion to dismiss for *forum non conveniens*" the First Circuit Court of Appeals does not. *Id.* (citing 15D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3847 (3d ed. 2008)). In the First Circuit, the following factors should be considered: (1) "convenience of parties and witnesses;" (2) "the availability of documents;" (3) "the possibility of consolidation;" and (4) "the

---

[1] This is a case relied upon by Defendants in support of their motion. *See* Mem. in Supp. of Defs.' Mot. to Transfer Venue to Dist. of Columbia 3.

5

order in which the district court obtained jurisdiction." *Coady v. Ashcraft & Gerel*, 223 F.2d 1, 11 (1st Cir. 2000); *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987).

In addition, when courts consider the possibility of consolidation, the question is whether an *identical* action is proceeding elsewhere such that transfer is warranted to conserve judicial resources. *See Cianbro Corp.*, 814 F.2d at 11.

Defendants' motion is completely undermined by the rules and cases they rely on in support of their motion to this Court. Several principles are derived from those cases. First, the plaintiff's choice of forum is presumptively the correct one when venue lies (as it concededly does here), and only an identical first filed suit receives *any* consideration concerning consolidation in a transfer motion. Finally, the other factors do not weigh in favor of transfer.

### B. The Plaintiffs Chose to File this Action in the District of Rhode Island and that Choice Weighs Heavily in Favor of Denying Transfer to the District of Columbia

There is a strong presumption in favor of the plaintiff's chosen forum. *See World Energy Alts., LLC*, 671 F. Supp. 2d at 217. *Astro-Med. Inc. v. Nihon Kohden Am., Inc.,* 591 F.3d 1, 12 (1st Cir. 2009), also cited by Defendants, is to the same effect. There the First Circuit affirmed Judge Lisi's decision to deny transfer to California when injury occurred in Rhode Island. *Id.* at 21. The Court specifically cited the "strong presumption" in favor of plaintiff's choice of forum. *Id.* at 13.

This "strong showing" that another venue is more convenient is a repeated theme in cases in this jurisdiction. *Boothroyd Dewhurst, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, Civ. A. No. 92-0075-P, 1993 WL 385713, at *7 (D.R.I. July 8, 1993)[2] (movant failed to make "strong showing" for transfer); *Levinger v. Matthew Stuart & Co., Inc.,* 676 F. Supp. 437, 441 (D.R.I. 1988) (finding no strong showing when factors were even); *and see Binzler v. Marriot Int'l Corp.,* 857 F. Supp. 1, 3 (D.R.I. 1994)

---

[2] This case was also relied on by Defendants. *See* Mem. in Supp. of Defs.' Mot. to Transfer Venue to Dist. of Columbia 3.

6

(plaintiff's choice of forum entitled to "great weight" and movant bears "heavy burden" of showing inconvenience of the forum and denying motion (citations omitted)). When a Defendant cannot make such a showing of inconvenience these motions are denied. *See Brian Jackson and Co., v. Eximias Pharmaceutical Corp.,* 248 F. Supp. 2d 31, 38-39 (D.R.I. 2003) (denying motion to transfer when balance of convenience not demonstrated by Defendant) (Smith, J.).

Nor is there *any* case support for Defendants' proposition that when two plaintiffs are from the forum, and another one is in a neighboring state one hundred miles away, that the Plaintiffs' choice of forum is entitled to no weight, as the Defendants' brief boldly states. *See* Mem. of Law in Supp. of Defs.' Mot. to Transfer Venues to Dist. of Columbia 10. In fact, once again, Defendants' cases do not stand for the proposition they are cited to support. In *Nash v. CVS Caremark Corp.*, C.A. No. 09-079S, 2009 WL 2393937 *2 (D.R.I. July 1, 2009), *adopted by* 2009 WL 10728638 (D.R.I. July 30, 2009), a case where the plaintiff was not, and others in the collective action may not have been, from Rhode Island, the court still found against transfer and stated:

> While it is true that Plaintiff's choice of venue is entitled to less weight because he is not a resident of this District, Defendant's argument that Plaintiff's choice is entitled to no deference is not supported by case law from this Court. Instead, as described in the applicable cases, Plaintiff's choice is entitled to less deference than if he filed in his home state, but not to no deference at all.

*Id.*; *see also Fifty-Six Hope Rd. Music, Ltd. v. Raising Cane's USA Inc.* 2014 WL 496890 (D. Mass.) (plaintiff's chosen forum in Massachusetts given "less force than usual" because it was not plaintiff's home state).

In this case, two of the plaintiffs, those most directly affected by Defendants' actions, are located in Rhode Island. One is in a neighboring state. Defendants did not cite, and Plaintiff has not found any case, under similar circumstances to the present action, where courts in this jurisdiction give the plaintiff's choice of forum anything less than the "strong presumption" of validity.

### C. *Loper Bright Enterprises, Inc. v. Ross* Is a Different Case, with Different Plaintiffs, Claims, and Remedies Such that Transfer to the District of Columbia Is Not Warranted

The putative reason for this motion is the presence of another action by other plaintiffs against the Defendants. Crucially, if another case has been filed in another district, there is no weight given to consolidation with such prior filing unless the case is *identical* with the case before the Court. *World Energy Alts., LLC* at 218-219. The burden of proof on such a motion for transfer remains firmly on the moving party. *Id.* (holding no transfer was warranted). In *Coady*, the court similarly agreed that the first-filed rule only applies to identical cases. *See* 223 F.2d at 11; *accord Cianbro Corp.*, 814 F.2d at 11 (first-filed rule applies to identical suits); *and see Cruz v. Hartford Casualty Insurance Company*, No. C.A.005-38S, 2005 WL 1231965 *2 (D.R.I. May 20, 2005) (Smith, J.) (first-filed rule applies to identical cases); *Feinstein v. Brown*, 304 F. Supp. 2d 279 (D.R.I. 2004) (Smith, J.) (applying the first-filed rule to identical parties and citing *Cianbro Corp.*).

The two actions are not identical. First, none of the plaintiffs are the same. *Compare* Compl. ¶¶ 9-11, ECF No. 1 *with Loper Bright Enterprises, Inc. v. Ross,* Case No. 20-cv-00466 ¶¶ 11-18 (D.D.C.), ECF No. 1 (filed Feb. 19, 2020) (all plaintiffs are New Jersey entities) ("*Loper Bright Enterprises, Inc.*"). Plaintiffs use a different gear type than the *Loper Bright Enterprises, Inc.* plaintiffs. *Compare* Compl. ¶¶ 9, 10, ECF No. 1 (F/Vs *Relentless* and *Persistence* use "small-mesh bottom trawl gear") *with Loper Bright Enterprises, Inc.* Compl. ¶¶ 11, 12, 13, 16 (some four plaintiffs use "mid-water trawl gear") *and id.* ¶¶ 14, 15, 17, 18 (some four plaintiffs use "bottom trawl gear"). Similarly, some of those plaintiffs hold category B permits which are not at issue here. *Loper Bright Enterprises, Inc.* Compl. ¶¶ 13, 15, 17. Secondly, as noted, none of the vessels or entities in that case use the type of ships or manner of fishing alleged here. *Compare* Compl. ¶¶ 47-59, 61-62, 68, 75, ECF No. 1 *with Loper Bright Enterprises, Inc.* Compl. *passim.*

Additionally, the *Loper Bright Enterprises, Inc.* plaintiffs allege violations of numerous statutes not at issue in this case. *See Loper Bright Enterprises, Inc.* Compl. ¶¶ 45-46, 117-18 (National Environmental Policy Act ("NEPA") claims);[3] 50, 111(c) (Anti-Deficiency Act ("ADA") claims); 51-52, 111(c) (Miscellaneous Receipts Act ("MRA") claims); 53-55, 111(d) (Independent Offices Appropriations Act ("IOAA")). Further, the *Loper Bright Enterprises, Inc.* plaintiffs' RFA claim appears inextricably linked with their NEPA claim, which is not the case here. *Compare Loper Bright Enterprises, Inc.* Compl. ¶¶ 117-18 *with* Compl. ¶¶ 102-107, ECF No. 1. Finally, the prayer for relief differs in important respects from thay in the *Loper Bright Enterprises, Inc.* case cited by Defendants. *Compare* Compl. Prayer for Relief A-I, ECF No. 1 *wtith Loper Bright Enterprises, Inc.* Compl. a-e.

Counsel for the *Loper Bright Enterprises, Inc.* plaintiffs has indicated that those plaintiffs intend to oppose any motion to consolidate in Washington, D.C. *See* Decl. of Ryan P. Mulvey (Apr. 7, 2020). Mr. Mulvey states:

> Although *Loper Bright Enterprises, Inc.* and *Relentless, Inc.* both challenge the validity of the Omnibus Amendment, there are significant factual differences that distinguish each set of plaintiffs, and each lawsuit raises a different set of legal claims and seeks different forms of relief, as the Department of Commerce itself has recognized. *See* Mem. of Law in Supp. of Defs.' Mot. to Transfer Venue to the Dist. of Columbia at 6, ECF No. 10-1.

*Id.* at ¶ 4.

> In light of the foregoing, and in particular the substantive differences in the legal claims raised in each lawsuit, my clients intend to vigorously oppose any attempt by the government to consolidate, unless circumstances significantly and materially change.

*Id.* at ¶ 5.

This case and *Loper Bright* are not the same case, they do not include "precisely the same issues." *See* Defs.' Memo. in Supp. of Mot. to Transfer Venue 6 (quoting *Cont'l Grain Co. v. The Barge*

---

[3] The Agencies' incorrectly state that Plaintiffs here make a claim under NEPA—they do not. *Compare* Mem. of Law in Supp. of Defs.' Mot. to Transfer Venue to the Dist. of Columbia 6 *with* Compl. ¶¶ 79-107, ECF No. 1 (no NEPA claims).

9

*FBL-585*, 364 U.S. 19, 26 (1960)).  Under the Magnuson-Stevens Fishery Conservation and Management Act, as amended by the Sustainable Fisheries Act, 16 U.S.C. § 1801 *et seq.* ("MSA"), the Atlantic Herring Fishery Management Plan ("Atlantic Herring FMP"), and the IFM Amendment and Final Rule, these factual differences matter, and may be outcome determinative for Plaintiffs in this action.  The Counts, claims and relief are perforce not the same, and transfer is not warranted.

### D. The Agencies Have Failed to Show that Any of the Remaining Factors Weigh in Favor of Transfer to the District of Columbia

While each motion to transfer is an individualized analysis in the discretion of the district court, there are factors which are traditionally taken into consideration in determining the balance of inconvenience.  *Atlantic Marine Const. Co. Inc., v. U.S. Dist. Ct. Dist. Of Texas*, 571 U.S. 49, 62 n. 6 (2013) notes the usual factors considered by courts in motions to transfer in the absence of contractual or statutory direction:

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Ibid.* (internal quotation marks omitted).  The Court must also give some weight to the plaintiffs' choice of forum.  *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

*Id.* Whether courts consider "private" or "public" factors, or call the factors something different, the analysis is similar.  As noted by one court:

> The First Circuit Court of Appeals has held that the following factors should be considered: (1) the convenience of the parties and witnesses, (2) the availability of documents, (3) the possibility of consolidation, and (4) the order in which the district court obtained jurisdiction.

*Arroyo-Perez v. Demir Group Intern.*, 733 F. Supp. 2d 314, 319 (2010) (citations omitted). As noted in *Arroyo-Perez*, given modern availability of documents electronically that factor is now given little weight. *Id.* at 321. It should also be noted that in that case the parties were involved in a claim about theft in Florida and the Court gave that non-identical suit no weight. *Id.* at 321. Another consideration is the balance of resources of the parties. *United States of America v. Stamps*, 18-cv-1106 (BMC), 2018 WL 6031155 *2 (E.D.N.Y. Nov. 16, 2019). In *Stamps*, the court noted that because the resources of the United States are so vast, and it is present everywhere, its choice of forum is entitled to less deference even when it is the plaintiff. *Id.* That same rationale should apply with greater force here where the Agencies, as defendants, are entitled to no presumption in their favor while the Plaintiffs are.

### 1. No Factor Outweighs the Rhode Island Plaintiffs' Choice of Forum

Relentless and Huntress are Rhode Island companies, located in and operating in Rhode Island. They sued in Rhode Island. Under all First Circuit precedent cited in sections II. A. and B. this is entitled to a strong presumption in favor of the plaintiffs' choice of forum. That Seafreeze is located in Massachusetts, a reasonable drive from this courthouse, does not detract but adds to the presumption of convenience of this court over that of D.C.

### 2. Convenience of the Parties

Two of the Defendants, NMFS and Chris Oliver, are not located in Washington, D.C. They are located in Silver Spring, Maryland. All the Defendants are either federal agencies or individuals in those agencies sued in their official capacity. The inconvenience to private parties, deeply embedded in their state, Rhode Island, and part of the regulated industry in this state, being dragged to Washington, D.C. to litigate their suit, against the very Leviathan injuring their business, is far greater than the federal sovereign having to litigate a suit in a court of its own creation in Rhode Island. The

11

Federal government's inconvenience in such litigation is slight and the discrepancy in the resources of the two sides of the "v." is obvious. *See Stamps*, 2018 WL 6031155 *2. Granting motions such as this one would defeat the purpose the Supreme Court described for the Congressional change in the venue rules against government officials in their official capacity. *See Stafford v. Briggs*, 444 U.S. 527, 542-544 (1980) (purpose of Congressional change to the venue statute, 28 U.S.C. § 1391(e), was to ensure suit could be brought against individuals for official actions in any district court not just in Washington D.C.). As the Court noted in *Stafford*, Congress was particularly incensed that Americans had to go to Washington, D.C. to sue federal officials for their official acts. *Id.*

### 3. Convenience of the Witnesses and Access to Evidence

Plaintiffs do not agree with the Defendants that this case will only be determined on the administrative record. There may be testimony and evidence because of contested issues of cost and effect of the IFM Amendment and Final Rule on Plaintiffs' businesses. There are many factual assertions in the Complaint on the unique style of fishing these Plaintiffs do and the specific effect of the regulation on these companies. If contested, Plaintiffs will need to provide documents and testimony from employees in Rhode Island (and perhaps Massachusetts). Meghan Lapp, who submitted many of the comments on behalf of Plaintiffs, may be called to explain points of the fishing industry or her comments. *See, e.g.,* Compl. ¶¶ 61, 62, 68, ECF No. 1. Ms. Lapp resides in Narragansett, Rhode Island. Moreover, many of the decisions leading the IFM Amendment and Final Rule were determined by the NEFMC which is based out of Newburyport, Massachusetts, and whose voting members are spread across New England. *See* NEFMC, *Council Members* (last visited Apr. 14, 2020) *available at* https://www.nefmc.org/about/council-members. If certain issues are contested, the NEFMC council members or staff may have to testify.

Should there be questions about the difference between the Plaintiffs' vessels and other vessels in the New England fleet and their methods of fishing, evidence concerning those vessels is here either

12

to gather, or if the Court wished to observe the vessels as part of its deliberations, here to visit. *See generally Rooney v. Sprague Energy Corp.*, 495 F. Supp.2d 135, 138 n. 2 (D. Me. 2007) (noting relatedness of the discovery Rule 34 and a motion for the court to view premises). There is no chance the Court would need to visit the bureaucratic offices of Washington, D.C. and Silver Spring, Maryland to determine any fact in this litigation. While visiting any premises is not likely, at this early stage, it is clear the balance on this issue leans towards Plaintiffs.

None of the facts have been agreed to by the Government. Nonetheless, even were the Defendants correct that no witnesses will be necessary in this case, the balance of convenience would only mean neutrality which does nothing for a movant required to overcome a "strong presumption." Additional Factors Counsel in Favor of This Forum.

The Agencies posit that that the D.C. Courts are more familiar with federal law than this Court. Mem. of Law in Supp. of Defs.' Mot. to Transfer Venue to the Dist. of Columbia 5-6. This is a calumny that is rejected even by the District of Columbia Federal District and Circuit courts. *Starnes v. McGuire*, 512 F.2d 918, 925 n. 7 (1974) *en banc* ("There is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia."); *Intrepid Potash-New Mexico, LLC v. Dept. of Interior.*, 669 F. Supp. 2d 88, 97 (D.D.C. 2009) (rejecting proposition that issue of federal law or presence of federal defendants argued for keeping case in Washington, D.C. and transferring to New Mexico). Defendants' assertion that the Magnuson-Stevenson Act is some staked-out preserve of the D.C. Circuit is belied by the very cases determining the statute of limitations under the statute. *See Goethel v. U.S. Dept. of Commerce*, 854 F.3d 106 (1st Cir. 2017), *cert. denied*, 138 S.Ct. 221, 199 L. Ed. 2d 120 (2017) (holding facial challenge to industry funding of at-sea monitoring brought outside the statute of limitations); *cf. Ace Lobster Co. v. Evans*, 165 F. Supp. 2d 148 (D.R.I. 2001) (APA and RFA challenge to lobster trap rule promulgated pursuant to

Magnuson-Stevens Act); *Hall v. Evans*, 165 F. Supp. 2d 114 (D.R.I. 2001) (APA challenge to limitations on monkfish harvest).

A related factor is what forum is affected by the suit. Washington, D.C. does not fish. In fact, Washington, D.C. is not a participant in any of the eight regional fishery management councils. *See* 16 U.S.C. § 1852. There is no commercial fishing fleet in Washington, D.C. and Atlantic herring is not found in the Potomac River. Washington, D.C. does not have, as Rhode Island does, a long history of commercial fishing going back to colonial times.[4] Obtaining and gathering sustenance from the sea affects the community in this forum in ways it does not affect the forum preferred by the Agency regulators.

Finally, the Defendants also claim that this District is over-burdened with cases and processes them more slowly than does the one in the District of Columbia. The Defendants admit the amount of cases per judge is less in this jurisdiction. *See* Mem. of Law in Supp. of Defs.' Mot. to Transfer Venue to the Dist. of Columbia 8. They then compare the time of disposition from filing of the Complaint, finding that the District of Rhode Island average is 9.2 months while in the District of Columbia it is 5.1 months. *Id.* This analysis makes no attempt to discern what kind of cases the District of Columbia district court has (what percentage are jury trial versus administrative for instance). This is not a proper reason for a Defendant to transfer a case anyway. If that were the case every transfer motion would favor the Eastern District of Virginia. *Pragmatus LV, LLC v. Facebook,*

---

[4] There is, for example, no analogue to the Rhode Island Fisherman's Alliance in Washington, D.C. because there is no commercial fishing fleet there. *See generally* Rhode Island Fisherman's Alliance, http://www.rifishermensalliance.com/ (last visited Apr. 14, 2020). When the Washington paper of record, the Washington Post, wanted to do a story on how the COVID-19 pandemic was affecting the fishing fleet it went to New England (and Honolulu) because there is no Washington, D.C. commercial fishing fleet. *See* Laura Reiley, *Commercial fishing industry in free fall as restaurants close, consumers hunker down and vessels tie up*, Wash. Post (Apr. 8, 2020, 7:00 AM), https://www.washingtonpost.com/business/2020/04/08/commercial-fishing-coronavirus/. Rhode Island papers do not have to go so far afield. Cynthia Drummond Sun, *Weathering the storm: Rhode Island's commercial fishery hit hard by COVID-19 pandemic*, THE WESTERLY SUN (Apr. 6, 2020) https://www.thewesterlysun.com/news/covid-19/weathering-the-storm-rhode-islands-commercial-fishery-hit-hard-by-covid-19-pandemic/article_3305f058-783d-11ea-be3b-cf4ea09a73b5.html. There is no dish known as "Washington, D.C. clam chowder."

*Inc.*, 769 F. Supp. 2d 991, 996-997(E.D. Va. 2011) (fact that Eastern District of Virginia ("rocket docket") moves quickly no reason not to send case to California) (clearing E.D. Va. of another case).

Moreover, relative speed of district courts in processing cases should be given little consideration here because the MSA "trades preliminary relief for expedited review." *Blue Water Fishermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 158 F. Supp. 2d 118, 124 (D. Mass. 2001); *see also* 16 U.S.C. § 1855(f)(4) ("Upon a motion by the person who files a petition under this subsection, the appropriate court shall assign the matter for hearing at the earliest possible date and shall expedite the matter in every possible way.").

Plaintiffs are Rhode Island and New England residents injured by the actions of a distant sovereign. They should be able to contest the issue here rather than be sent to a forum not of their choosing by litigants with unlimited resources and in the teeth of Congressional venue enactments meant to forestall the Government from making all of its citizens sue in Washington D.C. when they have a grievance.

Dated: April 16, 2020

Respectfully submitted,

/s/ John J. Vecchione
John J. Vecchione (admitted *pro hac vice*)
Kara Rollins (admitted *pro hac vice*)
New Civil Liberties Alliance
1225 19th Street NW, Ste. 450
Washington, DC 20036
Phone: (202) 869-5210
john.vecchione@ncla.legal
kara.rollins@ncla.legal

Kevin J. Holley, Esq.  #4639
Holley Law LLC
33 College Hill Road, Ste. 25C
Warwick, RI 02886
Phone: (401) 521-2622
kevin@holleylawllc.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2020, I electronically filed the foregoing Response in Opposition to Defendants' Motion to Transfer Venue to the District of Columbia and Memorandum of Law in Support thereof with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ Kevin J. Holley