IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RELENTLESS, INC., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| U.S. DEPARTMENT OF COMMERCE, et al., | : | Civil Action No. 1:20-cv-00108-WES-PAS |
| | : | |
| Defendants. | : | |

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF COLUMBIA

## INTRODUCTION

Venue is indisputably proper in the District of Columbia, which would supply a convenient venue for resolving the claims in this case by the same Judge assigned to resolve similar claims in a case already pending there. In opposing Defendants' Motion to Transfer, Plaintiffs contend that venue is proper in this District primarily because this Court should defer to their choice of forum and a more convenient venue can be found here. *See* Plaintiffs' Response in Opposition to Defendants' Motion to Transfer to the District of Columbia (ECF 11) ("Pls. Br."). Plaintiffs also suggest that Defendants misstated the law and presented points of argument to the Court that are not considered in evaluating whether to transfer a case under 28 U.S.C. § 1404(a). *Id*. at 5-6. Plaintiffs are wrong on all fronts, and their arguments have no merit. For all of the reasons stated here and in Defendants' Memorandum of Law in Support of Motion to Transfer (ECF 10-1) ("Defs. Br."), the interests of justice and convenience favor transfer.

# ARGUMENT

## PLAINTIFFS' ARGUMENTS AGAINST TRANSFER HAVE NO MERIT.

Pursuant to 28 U.S.C. § 1404(a), this Court has the authority to transfer this case "[f]or the convenience of parties and witnesses, in the interest of justice. . . to any other district or division where it might have been brought." The statute vests the Court with the discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted); *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009). As this Court has recognized, "[t]he ultimate inquiry for this Court is a determination of where the case should proceed to achieve convenience of the parties and witnesses as well as to fulfill the ends of justice." *Main Street NA Parkade, LLC v. Sleepy's LLC*, No. CA 13-593 S, 2014 WL 652313, at *1 (D.R.I. Feb. 19, 2014) (Smith, J.). The "ends of justice [are] the fundamental concern manifest in § 1404(a)." *Id*. (citation and internal quotations omitted). This bedrock principle plainly contradicts Plaintiffs' contention that "[t]he most important factor in any motion to transfer is the Plaintiffs' choice of forum." Pls. Br. at 1.

As an initial matter, Plaintiffs incorrectly argue that Defendants "misstated the standard for transfers," *Id*. at 5, and contend that this Court need not consider what have been described as the private and public interest factors in determining whether transfer is appropriate. In Plaintiffs' view, this Court should consider only the four factors articulated by the First Circuit: "(1) 'convenience of parties and witnesses;' (2) 'the availability of documents;' (3) 'the possibility of consolidation;' and (4) 'the order in which the district court obtained jurisdiction.'" *Id*. at 5-6 (citing *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)). Yet, multiple decisions from the District of Rhode Island

have evaluated and considered the public and private interest factors outlined in Defendants' opening memorandum, in addition to those set forth by the First Circuit. *See*, *e.g.*, *Brian Jackson & Co. v. Eximias Pharmaceuticals Corp.*, 248 F. Supp. 2d 31, 38-39 (D.R.I. 2003) ("The public and private interests factors applied in [an FNC] determination. . . are similarly applied in a motion for 1404(a) transfer"); *JKA v. Anisa Int'l*, C.A. No. 07-123S, 2008 WL 4949126, at *10 (D.R.I. Nov. 13, 2008); *Boothroyd Dewhurst, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, Civ. A. No. 92-0075-P, 1993 WL 385713, at *7 (D.R.I. July 8, 1993); *Paradis v. Dooley,* 774 F. Supp. 79, 82 (D.R.I. 1991). These factors include (1) ease of access to sources of proof; (2) availability of compulsory process to compel attendance of witnesses; (3) cost of attendance of willing witnesses; (4) ease of a view of premises, if necessary; (5) enforceability of the judgment, if obtained; (6) advantages and obstacles to a fair trial; (7) status of the court's trial calendar; (8) familiarity of forum with applicable state law. *Id*.

Clearly, Plaintiffs would prefer this Court to confine its analysis solely to the four factors articulated by the First Circuit and ignore the additional factors evaluated by the courts in this District. Most importantly, Plaintiffs appear to prefer that this Court ignore entirely "the ends of justice," which is the most "fundamental concern" inherent in an analysis of whether transfer is appropriate under 28 U.S.C. § 1404(a). *Main Street NA Parkade*, 2014 WL 652313, at *1. The Court should not. An evaluation of all of these factors is appropriate and necessary, and demonstrates with total clarity that the Court should exercise its discretion and transfer this case to the District of Columbia.

**A.   There Is No Dispute That Plaintiffs Could Have Brought This Action in the District of Columbia.**

As previously explained, the primary mandate in 28 U.S.C. § 1404(a) is that the new forum be a "district or division where [the case] might have been brought." Plaintiffs do not dispute that

3

this case could have been brought in the District of Columbia. Therefore, venue is proper in that judicial district.

**B.      The Interests of Justice and Convenience Favor Transfer.**

In evaluating whether to transfer a case to a different venue, a court must consider the interests of justice and convenience. 28 U.S.C. § 1404(a). Plaintiffs ignore this statutory mandate, and instead urge this Court to elevate their preferred choice of forum as the primary factor for consideration. Pls. Br. at 6-7. But a plaintiff's choice of forum is a private interest factor that should yield to the interest of justice and judicial economy, both of which favor transfer here.

As a threshold matter, the District of Columbia is equipped to address the governing law under the Magnuson-Stevens Fisheries Conservation and Management Act ("Magnuson-Stevens Act"). Contrary to Plaintiffs' contention, Defendants raise this issue not to "posit that the D.C. Courts are more familiar with federal law than this Court." Pl. Br. at 13. Rather, one of the factors considered by this Court is the "familiarity of the forum with applicable state law." *Boothroyd Dewhurst*, 1993 WL 385713, at *7. Other district courts within the First Circuit describe this factor as "familiarity with *governing* law." *Amary v. JP Morgan Chase & Co.*, Civ. Action No. 12–10777–NMG, 2012 WL 6045980, at *2 (D. Mass. Oct. 18, 2012) (emphasis added). Granted, the Magnuson-Stevens Act is a federal law, not state law. Nevertheless, Defendants cited a sample of cases in which the District of Columbia has addressed issues arising under the Magnuson-Stevens Act for the purposes of providing this Court with a well-rounded discussion of the District of Columbia's familiarity with that statute. Defs. Br. at 5. These included lawsuits concerning amendments to fishery management plans, which is the precise issue before the Court in this case and the *Loper Bright Enterprises* case.

4

Moreover, this case and the *Loper Bright Enterprises* case assert causes of action that plainly overlap. Both cases claim that the final rule exceeds Defendants' statutory authority. *Compare* ECF 1 *with* ECF 10-3 (Complaint, *Loper Bright Enters. v. Ross*, Case No. 20-cv-00466 (D.D.C.)). Both cases allege that the final rule improperly infringes on Congress's exclusive taxation authority and power to direct the use of public funds under the Tax and Spending and Appropriations Clauses of the U.S. Constitution. *Id*. Both cases allege that the Omnibus Amendment and final rule violate the Regulatory Flexibility Act.[1] *Id*. These commonalities cannot be disputed.

Instead, Plaintiffs argue that the *Loper Bright Enterprises* case alleges "violations of numerous statutes not at issue in this case," Pls. Br. at 9, a fact previously brought to the Court's attention. Defs. Br. at 6 n.1. But this simply means that the *Loper Bright Enterprises* plaintiffs rely on several additional statutes for their overarching claim that the industry-funded monitoring requirement established by the Omnibus Amendment and final rule is unlawful. *Loper Bright Enterprises* Complaint ¶ 109 ("Defendants violated the MSA and other applicable laws."). This claim of unlawfulness is mirrored throughout the Complaint in this case, including verbatim in some instances. ECF 1 ¶ 83 (the "[Omnibus] Amendment and Final Rule violate the MSA and other applicable laws"); *compare Loper Bright Enterprises* Complaint ¶ 110 (industry-funded monitoring is "arbitrary, capricious, and an abuse of discretion. . . contrary to constitutional right, power, privilege, or immunity. . . and in excess of statutory jurisdiction, authority or limitations) *with* ECF 1 ¶ 83 (industry funded monitoring "is arbitrary, capricious, an abuse of discretion, or

---

[1] Defendants inadvertently stated in their opening memorandum that Plaintiffs in this case asserted a cause of action under the National Environmental Policy Act ("NEPA"), Defs. Br. at 6, and acknowledge here that no such claim is asserted in this case. Nevertheless, the fact that Plaintiffs have not asserted a NEPA claim here is not dispositive of the remaining similarities between this case and the *Loper Bright Enterprises* case.

not otherwise in accordance with law; contrary to constitutional right, power, privilege or immunity, and in excess of statutory jurisdiction, authority, or limitations").

And those are just the commonalities between the first claims in each case: for example, both cases also assert that Defendants violated the Regulatory Flexibility Act. *Loper Bright Enterprises* Complaint at Count 2; ECF 1 ¶¶ 103-107. While Plaintiffs assert that their RFA claim "requires a unique analysis" because of alleged differences between their vessels and other vessels in the Atlantic herring fishery, Pls. Br. at 4, that argument rests on a faulty premise. The RFA presents a "purely procedural" obligation. *See, e.g., Associated Fisheries of Me.*, 127 F.3d 104, 114 (1st Cir. 1997); *A.M.L. Int'l v. Daley*, 107 F. Supp. 2d 90, 105 (D. Mass. 2000); *N.C. Fisheries Ass'n v. Gutierrez*, 518 F. Supp. 2d 62, 95 (D.D.C. 2007). Thus, the question before the Court will be whether Defendants conducted a "regulatory flexibility analysis" when proposing a rule that will have "a significant economic impact on a substantial number of small entities." 5 U.S.C. §§ 601(6), 603, 605(b). There are no allegations in this case that would require a "unique analysis" as to Plaintiffs. Indeed, the substantive allegations in Count Four of the Complaint are substantially similar to the substantive allegations regarding the RFA in the *Loper Bright Enterprises* case. *Compare* ECF 1 ¶ 105 ("Defendants failed to prepare legally sufficient initial or final regulatory flexibility analyses in violation of the RFA.") *with Loper Bright Enterprises* Complaint ¶ 119 ("Defendants violated the RFA and relevant implementing regulations by failing to prepare adequate initial or final regulatory flexibility analyses that took into consideration the economic effects of industry-funded monitoring in the Atlantic herring fishery and other FMPs and, in particular, the adverse impact on small businesses.").

Plaintiffs also contend that transfer is not appropriate because "none of the plaintiffs are the same." Pls. Br. at 8. They focus on the fact that the plaintiffs in the *Loper Bright Enterprises*

6

case are from New Jersey, and contend that they use a different gear type than those plaintiffs. *Id*. These are distinctions without a difference. That is, Plaintiffs allege that Defendants' adoption of the Omnibus Amendment and final rule are unlawful. ECF 1 ¶¶ 80-85. The Omnibus Amendment and its requirement that certain vessels in the Atlantic herring fishery fund at-sea monitors applies to vessels that have Category A permits. *Id*. ¶ 45. The fishing vessels in this case allege that they have Category A permits, as do the plaintiff-vessels in the *Loper Bright Enterprises* case.[2] The fact that the fishing vessels in the two cases may use different gear does not eliminate this key parallel between the two cases: the industry-funded monitoring requirement applies to them.

As a last ditch effort to deny that transfer is appropriate, even though it would achieve significant efficiencies and judicial economy for the two cases to be heard in the District of Columbia and consolidated before the same judge, Plaintiffs rely on the declaration of Ryan Mulvey, counsel of record for the *Loper Bright Enterprises* case. Pls. Br. at 4, 9. Mr. Mulvey's declaration proclaims that "there are significant factual differences that distinguish each set of plaintiffs, and each lawsuit raises a different set of legal claims and seeks different forms of relief." Pls. Br. at 9 & Ex. A. Mr. Mulvey's declaration, however, reflects the legal position of his clients. It does not govern this case. Nor is the *Loper Bright Enterprises* plaintiffs' intention to oppose consolidation dispositive. Should the Court grant Defendants' motion to transfer, Defendants will present their arguments in support of consolidation of the two cases at the appropriate time.[3]

---

[2] The plaintiffs in the *Loper Bright Enterprises* case initially included four fishing vessels that did not have Category A herring permits. Three of them were determined to not have Category B permits and the fourth did not have a herring permit at all, as had been alleged. On April 21, 2020, counsel for the plaintiffs in the *Loper Bright Enterprises* case filed a motion pursuant to Rule 21 of the Federal Rules of Civil Procedure to drop those four plaintiffs from that lawsuit. The District of Columbia court granted that motion in a text order on April 22, 2020. But the remaining plaintiffs in *Loper Bright Enterprises* all have Category A permits.

[3] Plaintiffs also argue that the Court should not consider the possibility of consolidation because the two cases are not identical and seem to suggest that Defendants are relying on the first-filed

The lack of differences between the two cases and the overwhelming similarities make clear that transfer is appropriate. Should the cases be allowed to proceed in different jurisdictions, there is a significant risk of conflicting opinions. *See Midwest Television v. FCC*, 364 F.2d 674, 675-76 (D.C. Cir. 1996) (per curiam). Conversely, transferring this case to the District of Columbia will achieve substantial economies, including that only one court will have to familiarize itself with the administrative record[4] and the statutory mandates at issue. Transfer will eliminate the possibility of conflicting orders, and avoid the costs associated with unnecessary duplication of effort. These factors all serve the public interest and weigh heavily in favor of transfer.

## C.     The Other Public Factors Weigh In Favor Of Transfer.

Two additional public factors weigh in favor of transfer. First, relative court congestion slightly favors the District of Columbia. As a threshold matter, Plaintiffs mischaracterize Defendants' initial argument on this point and argue that "[t]his is not a proper reason for a Defendant to transfer a case anyway." Pls. Br. at 14. But case law from this District shows otherwise, as one of the factors this Court has considered when evaluating transfer motions is the "administrative difficulties flowing from court congestion." *Paradis v. Dooley*, 774 F. Supp. 79, 82 (D.R.I. 1991); *see Nash v. CVS Caremark Corp.*, C.A. No. 09-079S, 2009 WL 2393937, at *3 (D.R.I. July 1, 2009). To that end, Defendants cited the statistics provided by the Administrative Office of the Courts, which show that the time for processing cases in the District of Columbia is shorter than in this District. Defs. Br. at 8. The claims in this case arise under the Magnuson-

---

rule. Pls. Br. at 6, 8. Defendants acknowledged in their opening memorandum, however, that they were not relying on the first-filed rule for that precise reason. Defs. Br. at 11. Rather, consolidation should be considered because of the significant judicial economies that will be achieved if the two cases are in the same court and before the same judge.

[4]   Defendants will rely on the same administrative record for both cases, and the documents comprising the administrative record already have been made available to Plaintiffs in this case and the plaintiffs in the *Loper Bright Enterprises* case.

Stevens Act, which, as Plaintiffs acknowledge, directs courts to "expedite the matter in every possible way." Pls. Br. at 15 (citing 16 U.S.C. § 1855(f)(4)). Thus, it was appropriate for Defendants to provide the Court with those statistics and they should be given more than the "little consideration" urged by Plaintiffs. Pls. Br. at 15.

Second, there generally "is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). Plaintiffs seem to describe this factor as "what forum is affected by the suit," Pls. Br. at 14, and contend that Washington, D.C., is not an appropriate forum because it is not affected by the Omnibus Amendment and final rule. *Id*. But their argument wholly ignores that the issues presented in this case have a broad scope and regional impact that extends beyond Rhode Island. The Omnibus Amendment and final rule apply to the entirety of the Atlantic herring fishery, which even Plaintiffs acknowledge operates from New England to New Jersey. ECF 1 ¶ 33. Any suggestion that they apply solely to Plaintiffs (Pls. Br. at 3-4), only Rhode Island fishing vessels (Pls. Br. at 14), or only to vessels located in New England (Pls. Br. at 14 n.4) is just not accurate.[5] The most obvious proof of these facts is the *Loper Bright Enterprises* case, in which the plaintiffs are fishing vessels located in New Jersey. This factor, therefore, weighs in favor of transfer, particularly in light of the other significant efficiencies that would be achieved by transfer.

---

[5] Similarly inaccurate is Plaintiffs' contention that they are being "forced" to carry an industry-funded at-sea monitor, or otherwise fish in a prescribed way. Pls. Br. at 3. To the contrary, participants in the Atlantic herring fishery that hold a Category A permit and declare their intent to land 50 metric tons or more of herring on any given fishing trip (vessels landing less than 50 metric tons may request and receive a waiver from this coverage requirement) have an obligation to carry and fund an at-sea monitor unless a federally funded monitor is assigned under another monitoring program. *See generally* 85 Fed. Reg. 7414, 7,417-19 (Feb. 7, 2020). If such participants choose not to accept these obligations, they have the option of not participating in the herring fishery.

**D.    The Private Interest Factors Favor Transfer.**

The centerpiece of Plaintiffs' argument against transfer is that this Court should defer to their choice of forum because two of the Plaintiffs are located in Rhode Island. Pls. Br. at 6-7. The location of Relentless Inc. and Huntress Inc., which own the fishing vessels Relentless and Persistence, is not at issue. The third Plaintiff, Seafreeze Fleet LLC, is alleged to own the other two Plaintiffs and is a Massachusetts limited liability company that is headquartered in Massachusetts. ECF 1 ¶ 11. Rhode Island is not Seafreeze Fleet LLC's home forum. Thus, the question is whether this Court should defer to the choice of forum of the ultimate owner of the two Rhode Island Plaintiffs, when that owner is not a Rhode Island resident. Defendants respectfully suggest that the answer is no. Decisions within the District of Rhode Island have held that a non-resident's choice of forum is not entitled to deference. *See Nash*, 2009 WL 2393937, at *2. Here, where Plaintiffs are a mix of residents (Relentless Inc. and Huntress Inc.) and non-residents (Seafreeze Fleet LLC, the ultimate owner of the residents) the factor is neutral, at best. Other district courts have split in their approach to such circumstances. *Compare Totilo v. Herbert*, 538 F. Supp. 2d 638, 640-41 (S.D.N.Y. 2008) (finding a lower degree of deference was warranted for the plaintiffs' choice of forum where he was just one of many depositors injured by defendant) *with Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11-12 (D.D.C. 2007) (affording deference to plaintiffs' choice of forum where one of the five plaintiffs was a resident of the chosen forum).

Plaintiffs also argue that this District is more convenient for witnesses and access to evidence. Pls. Br. at 12-13. They claim that "there may be testimony and evidence because of contested issues of cost and effect of the [Omnibus] Amendment and Final Rule on Plaintiffs' businesses." *Id.* at 12. But this argument fails as a matter of law. Plaintiffs brought this case pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. ("APA"). *E.g.*, Complaint ¶

10

2 ("This is an action arising under the Magnuson-Stevens Fishery Conservation and Management Act. . . the Administrative Procedure Act. . . and the Regulatory Flexibility Act.") (citations omitted); ¶¶ 3-4, 8 (relying on the APA for the standard of review, the assertion of jurisdiction, and the Court's authority to grant permanent injunctive relief). In such cases, "[t]he appropriate standard for review [is], accordingly, whether the [agency's] adjudication was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' as specified in 5 U.S.C. § 706(2)(A)." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* Based on the allegations in the Complaint and its reliance on the APA to supply the scope and standard of review, there will be no need for "documents and testimony from employees in Rhode Island (and perhaps Massachusetts)." Pls. Br. at 12. Accordingly, the convenience and location of witnesses is less critical when assessing venue. *Narragansett Indian Tribe v. Hendrickson*, C.A. No. 1:19-cv-00158-MSM-PAS, 2020 WL 65087, at *1 (D.R.I. Jan. 7, 2020) ("As [this] is a case brought under the [APA], 'neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the [venue] analysis.'") (quoting *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C. 2010)). The same reasoning applies to the availability of documents. Here, judicial review will be based on the administrative record, and that record is the same in both cases.

Finally, significant travel will not be required because the case is likely to be resolved on dispositive motions. Nevertheless, Plaintiffs suggest that the Court should consider the possibility that it will be necessary for the Court to "observe the vessels as part of its deliberations[,]" although even they acknowledge that this "is not likely" to occur. Pls. Br. at 13. In short, the ease of a view

11

of the premises is not a serious factor for the same reasons that the convenience of witnesses and availability of documents need not be considered.

## CONCLUSION

Defendants have addressed the statutory requirements of 28 U.S.C. § 1404(a) and each of the factors that must be considered when evaluating the interests of justice and convenience. These clearly outweigh Plaintiffs' preferred choice of forum, particularly when one considers that only two of the plaintiffs are residents in this District (and are owned by the third out-of-state plaintiff). The Court should grant the Motion and transfer this case to the District of Columbia where the *Loper Bright Enterprises* case is pending.

Dated: April 23, 2020                                   Respectfully submitted,

JEAN E. WILLIAMS,
Deputy Assistant Attorney General
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief

/s/ Alison C. Finnegan
Alison C. Finnegan, Senior Trial Attorney
(Pennsylvania Bar No. 88519)
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0500; Fax: (202) 305-0275
alison.c.finnegan@usdoj.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2020, I electronically filed the foregoing Reply Memorandum in Support of Motion to Transfer Venue to the District of Columbia with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

       /s/ Alison C. Finnegan

Case 1:20-cv-00108-WES-PAS   Document 12   Filed 04/23/20   Page 13 of 13 PageID #: 379